HINSHAW D/B/A GENERAL ROOFING & SIDING
CO. *v.* WADDELL.

[No. 18,908. Filed May 28, 1957. Rehearing denied June
26, 1957. Transfer denied November 26, 1957.]

*Murray, Mannon, Fairchild & Stewart, Richard W. Guthrie* and *James L. Murray,* all of Indianapolis, for appellant.

*Power & Power, Robinson & Robinson,* and *William Robinson, Jr.,* all of Frankfort, for appellee.

CRUMPACKER, J.—The Industrial Board allowed the appellee compensation in the sum of $30.00 per week for 350 weeks for the death of her husband Waldo Waddell upon whom she was wholly dependent. She asserted and the Industrial Board found that said decedent Waldo Waddell was in the employ of the appellant on the 19th day of April, 1954, on which day he sustained an injury to his right leg through an accident arising out of and in the course of employment as the direct result of which he died on April 25, 1954.

In seeking a reversal of this award the appellant urges two propositions as follows: (1) There is no evidence whatever of probative value tending to prove that said Waldo Waddell sustained an accidental injury on April 18, or on any other day, while in the appellant's employ; and (2) the evidence presented, with all inferences reasonably deducible therefrom, is of such a conclusive nature as to force a conclusion contrary to the finding of the Industrial Board.

It is undisputed that no one saw Waldo Waddell suffer the accidental injury which is the subject of this litigation and consequently there was no one who could testify, from actual knowledge, concerning the time, place or manner of said accident if, in fact, one occurred. The evidence, however, tends to establish the following facts: The appellant, on April 19, 1954, was engaged in the roofing business in Frankfort, Indiana, and vicinity and on that day the decedent Waldo Waddell was in his employ as a salesman whose duties

were to solicit new business, estimate costs of roofing jobs and to contract for the performance thereof. On April 19, 1954, Waldo Waddell called on Clarence Walker, a farmer living four miles south of Frankfort, for the purpose of selling him a new roof for a barn. In order to get the measurements of the proposed roof Waddell and Walker climbed into the haymow. There was quite a bit of hay in the mow, some of it loose and some in bales which had been thrown in promiscuously and permitted to remain where they fell. In measuring the roof Waddell and Walker were required to climb in and over the hay to some extent. After they left the mow they walked to Waddell's car where Walker selected the type of roof he wanted from samples furnished by Waddell. The roof was charted, a contract prepared and signed and Waddell left for Frankfort at about 4 o'clock in the afternoon. Later that same day Waddell went to the appellant's residence to report on the day's transactions. The appellant was then living in an apartment over his store and Waddell came to the foot of the stairs and called to the appellant to the effect that "he couldn't make it up the stairs because his leg was hurting; that he must have hurt his leg sometime when he was out measuring the barn."

On April 22, 1954, he consulted Dr. Bruce A. Work who, upon examination, found swollen areas in the calf of the right leg that were painful to the touch. The leg below such area was slightly swollen, mottled in color and cold. In recounting this visit the doctor testified that Waddell, in giving him the history of his leg trouble, stated that "in order to see the roof and slopes and all he had stepped up on a bale of hay and when he stepped down he had bumped his right lower leg on the bale and all this came on afterwards." Dr. Work diagnosed the condition of his leg as thrombophlebitis—a blood clot clinging to the inner wall of a

deep vein. As treatment he prescribed absolute rest in bed with the right foot elevated approximately 14 inches. Late that same day the appellant, accompanied by Herbert Hiser, local agent of the Wolverine Insurance Company which had written compensation insurance on appellant's employees, called on Waddell and found him in bed. In commenting upon his condition he again said "he must have hurt his leg when he was measuring Walker's barn because after he was back in his car he noticed pain in his leg. He indicated it was from baled hay in the mow and said he must have slipped over the baled hay or twisted it somehow while in there." Three days later he suffered severe pains in the chest, shortness of breath and died within minutes thereafter. The autopsy disclosed that his death was due to a large blood clot in the pulmonary artery which, in Dr. Work's opinion, "arose in the right lower leg in the area of the thrombophlebitis which was caused by the bump on the leg on Monday, April 19, on the bale." The doctor stated, however, his conclusion that the thrombophlebitis in the decedent's right leg was caused by its being bumped on a bale of hay was prompted by the history of such an injury given him by the decedent and except for such history he would have attributed Waddell's death to a diseased circulatory system unasociated with accidental injury. During the course of the trial, before the hearing member of the Industrial Board appellee's Exhibits Nos. 2, 3, 4, 5, 6, 7 and 8 were introduced in evidence. Exhibits 2 and 4 appear from the record to be identical and are letters written by a Dr. Arthur D. Dannin, an osteopath, to said Wolverine Insurance Company in which the doctor stated that Waldo Waddell sustained an injury to a knee caused by a fall. Exhibit No. 3 is a written report made by Dr. Work to the appellant's insurance carrier, Wolverine Insurance Company, on a printed form in which the doctor was asked to "state in the patient's

own words where and how the accident occurred." In response to this request the doctor wrote: "Measuring barn roof, felt knee give and pain." In his letter of transmittal to the Wolverine Insurance Company the doctor wrote: "Mr. Waldo Waddell came to me on April 22, 1954, stating that while he was measuring a barn roof April 19, 1954, on a farm, he stepped up on a bale and as he stepped down bumped the back of his right leg—pain was continuous from then on." Exhibit No. 5 is another letter from Dr. Dannin to the Wolverine Insurance Company in which the decedent's physical condition in the early part of April, 1954, is described. No accidental injury the deceased may have suffered is mentioned therein. Exhibit No. 6 is a report prepared by Dr. Work on the Industrial Board's form No. 26, intended for filing with said board but in this case mailed to the Wolverine Insurance Company with a letter of transmittal which was introduced in evidence as Exhibit No. 7. As far as the record shows this report was never filed with the Industrial Board. Among other things form No. 26 asks the attending physician to state in the patient's own words where and how the accident occurred. To this request Dr. Work answered: "Measuring barn roof, felt knee give with pain." Exhibit No. 8 is a letter written by Wolverine Insurance Company to the appellee's lawyers in which it expressed its belief that Waddell's death was not due to accidental injury and suggested an autopsy to determine the matter.

It will be observed that each of these exhibits is hearsay evidence. Neither Dr. Work nor Dr. Dannin represented the appellant nor had either of them authority to write letters and make reports without the knowledge and consent of the appellant which could in any mannner bind him as to their contents. Also it is apparent that neither Dr. Work nor Dr. Dannin had any actual knowledge that Wad-

dell had ever suffered an accidental injury to his leg. They merely repeated in their reports and letters what he told them in respect thereto. However, as far as the appellant's brief discloses, all of this evidence came in without objection and we are not at liberty to go to the record to supplement such brief and thus reverse the award. The appellant's brief must set out as much of the record as fully presents the question raised without resort to the transcript. *McCague* v. *N. Y. C. & St. L. R. Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569, 73 N. E. 2d 48.

It is the rule in Indiana that where incompetent evidence has been admitted without objection or exception it may be considered upon appeal in determining the sufficiency of the evidence notwithstanding it should have been excluded upon proper and timely objection. *Klinger* v. *Ottinger* (1939), 216 Ind. 9, 22 N. E. 2d 805; *Fetter* v. *Powers* (1948), 118 Ind. App. 367, 78 N. E. 2d 555. When we apply this rule to the case at hand we are bound to say that the evidence, though much of it be hearsay and conjectural in nature, sustains the findings and the award of the Industrial Board.

This brings us to a consideration of the appellant's second proposition, to-wit: The evidence presented with all inferences reasonably deducible therefrom is of such a conclusive nature as to force a conclusion contrary to the finding of the majority of the Industrial Board and therefore the award should be reversed. It must be conceded that there is much credible and convincing evidence in the record tending to prove that the appellee's decedent suffered no accidental injury while in the appellant's employ and that the thrombophlebitis which eventually caused his death was the result of a diseased condition of his circulatory system, hypertension and cardiac deficiency. If we were required by law to discard all the

hearsay and conjectural evidence in the record we would be constrained to recognize merit in this proposition. In determining the sufficiency of the evidence to support the award, however, we must consider all such evidence as came into the case without objection. *Klinger* v. *Ottinger, supra*. The appellant's brief shows no objection thereto and so the occurrence of an accidental injury resulting in the death of appellee's decedent became a question of disputed fact which the Industrial Board resolved in favor of the appellee. There being evidence, such as it is, to support the finding we are bound thereby.

Award affirmed with statutory interest.

NOTE.—Reported in 142 N. E. 2d 640.