Grover FITZGERALD, Appellant–
Plaintiff,

v.

U.S. STEEL, Appellee–Defendant.

No. 93A02–0802–EX–134.

Court of Appeals of Indiana.

Aug. 27, 2008.

Jeffrey S. Sturm, George C. Patrick & Associates, P.C., Crown Point, IN, Attorney for Appellant.

Elizabeth M. Bezak, Singleton, Crist, Austgen & Sears, LLP, Munster, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Grover Fitzgerald appeals from the Worker's Compensation Board's ("Board") dismissal of his application for adjustment of claim. Concluding that Fitzgerald's application is time-barred under Indiana Code § 22–3–3–27 (1998), that the reimbursed wages he received from U.S. Steel ("USS") do not constitute "compensation," that the date of maximum medical improvement or the date his permanent partial impairment rating was issued is not the starting date for calculating the statute of limitations under the facts of this case, that USS did not make fraudulent misrepresentations to Fitzgerald, and that USS did not breach any legal duties owed to him, we affirm.

### Facts and Procedural History

On December 21, 1999, Fitzgerald, an employee of USS, sustained an injury arising out of and in the course of his employment. On December 28, 1999, USS and Fitzgerald came to a written agreement, called "Agreement to Compensation of Employee and Employer," Appellant's App. p. 32, in which USS agreed to pay Fitzgerald temporary total disability. This agreement was filed with the Board. Fitzgerald received temporary total disability benefits from December 22, 1999, through February 7, 2001, totaling $28,863.68. Thereafter, Fitzgerald went back to work. After returning to work, USS paid Fitzgerald's medical and dental bills caused by the injury because he had not reached maximum medical improvement. On February 9, 2004, approximately three years after Fitzgerald's temporary total disability payments had ceased, Fitzgerald underwent a permanent partial impairment evaluation with Dr. Suresh Mahawar. Dr. Mahawar's evaluation indicated that Fitzgerald had reached maximum medical improvement and sustained a five percent ($4500.00) whole person permanent impairment rating.

On February 19, 2004, Fitzgerald filed his application for adjustment of claim in which he alleged that he was "entitled to T.T.D. [temporary total disability], P.P.I. [permanent partial impairment], future treatment and payment of bills." *Id.* at 29. In his application, Fitzgerald requested a hearing for a "Worker's Compensation Claim," rather than for a "change of condition." *Id.* In response, USS filed a motion to dismiss claiming Fitzgerald's application was time-barred. On May 26, 2005, the parties filed a joint stipulation for compensation and payment of permanent partial impairment. In this agreement, USS agreed to pay Fitzgerald $4500.00 for permanent partial impairment but reserved the right to argue that his application was outside the statute of limitations for purposes of his future medical expenses. Thereafter, a hearing was held in which the parties presented argument and evidence regarding whether Fitzgerald's application was timely filed. The issues as stipulated by the parties were as follows:

I. Is Fitzgerald's Application, which was filed more than two years after the date of his accident and more than three years after he last received TTD payments, time-barred under I.C. 22–3–3–3?

II. Does Fitzgerald's Application seek a "change in condition" or "modification["] and, if so, is his Application time-barred under I.C. 22–3–3–27?

III. Is the statute of limitations tolled due to alleged fraud and/or misrepresentation committed by United States Steel Corporation?

IV. Does the payment of the PPI by USS extend the statute of limitations for Fitzgerald even though the payment was made upon the express condition that USS's payment of the PPI would neither extend nor shorten the statute of limitations and where USS specifically preserved its right to maintain such a defense with respect to Fitzgerald's claim for future dental treatment?

V. Does any wage reimbursement under I.C. 22–3–3–4 for attending a PPI evaluation and/or dental treatment constitute "compensation" under I.C. 22–3–3–27?

*Id.* at 21–22. On October 20, 2006, a single hearing member of the Board issued an order on USS's motion to dismiss, which included the following pertinent findings of facts and conclusions thereon:

16. That Fitzgerald's Application (filed more than two (2) years after the date of his injury and more than three (3) years after he last received TTD payments) is time-barred under I.C. 22–3–3–3.

17. That Fitzgerald's Application does not seek a "change in condition" or "modification" and therefore, I.C. 22–3–3–27 is not applicable.

18. That even if I.C. 22–3–3–27 were applicable, Fitzgerald's Application would still be time-barred under I.C. 22–3–3–27 for several reasons including:

(a) Fitzgerald has failed to prove that USS made "wage reimbursement" for medical treatment within one (1) year prior to the filing of his Application.

(b) Even if Fitzgerald could prove that USS made "wage reimbursement" for medical treatment within one (1) year prior to the filing of his Application, "wage reimbursement" does not constitute "compensation" under I.C. 22–3–3–27.

(c) A PPI evaluation does not constitute "treatment" under I.C. 22–3–3–4 and any wage reimbursement for attending a PPI evaluation does not toll the statute of limitations.

(d) "Compensation" under I.C. 22–3–3–27 includes only TTD, TPD, PPI and PTD payments.

(e) Fitzgerald had one (1) year after the date for which he last received TTD payments within which to timely file his Application for future PPI and dental care in accordance with applicable law, including: *Halteman Swim Club v. Duguid,* 757 N.E.2d 1017 (Ind. App.2001) and *I.C.* 22–3–3–27. In other words, in order for Fitzgerald's Application to be timely under I.C. 22–3–3–27, he needed to file his Application on or by February 7, 2002, for the Board to have jurisdiction.

19. That the payment by USS of the PPI in May, 2005, did not extend the statute of limitations for the filing of Fitzgerald's claim.

20. That USS did not commit any fraud or misrepresentation relating to the filing of Fitzgerald's Application.

21. That the statute of limitations was not tolled due to alleged fraud and/or misrepresentation by USS. (It is specifically found that USS did not commit any fraud and/or misrepresentation relating to Fitzgerald's Application).

22. That Fitzgerald had two (2) years after the last date for which he was paid TTD compensation (February 7, 2001) within which to timely file his Application. In other words, in order to timely file, Fitzgerald needed to file his Application on or by February 7, 2003.

### CONCLUSIONS

1. The Application for additional compensation was filed too late.

2. There was no fraud and no money to be paid under I.C. [22–3–4–12] or 12.1.

*Id.* at 26–27. Thereafter, the single hearing member issued the following order:

IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Worker's Compensation Board of Indiana that the Motion to Dismiss is denied with respect to claims for payment of medical/dental expenses under I.C. 22–3–3–4(e).

IT IS FURTHER ORDERED that the Motion to Dismiss is granted with respect to claims for compensation and payment of medical/dental expenses under I.C. 22–3–3–4(c).

IT IS FURTHER ORDERED that the Motion to Dismiss is granted as to I.C. 22–3–3–3 if that section is applicable.

*Id.* at 27. Following this order, USS filed an application for review by the full Board claiming that its denial of USS's motion to dismiss with regard to claims for payment of future medical and dental expenses is contrary to law. Specifically, USS argued that because Fitzgerald's claim is time-barred the Board lacks jurisdiction over his claim for future medical and dental expenses. Thereafter, a single hearing member rejected USS's application for review by the full Board stating that the case was not ripe for appeal. Appellee's App. p. 51. USS filed a motion requesting that

the Board reconsider its order, and both Fitzgerald and USS filed briefs in support of their respective positions. Thereafter, a single hearing member of the Board issued an order granting USS's motion to dismiss concluding that it lacked jurisdiction to consider the merits of Fitzgerald's application. Appellant's App. p. 16–19. The full Board affirmed the single hearing member's decision. Fitzgerald now appeals.

### Discussion and Decision

Fitzgerald contends that the Board erred in finding that his application was time-barred. When reviewing the decisions of the Board, we are bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Eads v. Perry Twp. Fire Dep't,* 817 N.E.2d 263, 265 (Ind.Ct. App.2004), *trans. denied.* Additionally, all unfavorable evidence must be disregarded in favor of an examination of only that evidence and the reasonable inferences therefrom which support the Board's findings. *Id.* Moreover, we neither reweigh the evidence nor judge the witness's credibility. *Id.* We review questions of law *de novo. Prentoski v. Five Star Painting, Inc.,* 827 N.E.2d 98, 101 (Ind.Ct.App.2005), *aff'd in part, adopted in part by* 837 N.E.2d 972 (Ind.2005).

The Worker's Compensation Act ("Act") provides "compensation" for personal injury or death by accident arising out of and in the course of employment. Ind.Code § 22–3–2–2. The statute of limitations that applies to all applications for Worker's Compensation benefits filed with the Board is found at Indiana Code § 22–3–3–3, which provides, in pertinent part, as follows:

The right to compensation under IC 22–3–2 through IC 22–3–6 shall be forever barred unless within two (2) years after

the occurrence of the accident, or if death results therefrom, within two (2) years after such death, a claim for compensation thereunder shall be filed with the worker's compensation board.

In order to have complied with this statute of limitations, Fitzgerald was required to have filed a claim for compensation with the Board within two years after the occurrence of the accident. On December 28, 1999, seven days after the accident occurred, USS and Fitzgerald reached an agreement in regard to compensation. Thereafter, USS paid Fitzgerald temporary total disability from December 22, 1999, through February 7, 2001. Because the agreement for temporary total disability compensation between USS and Fitzgerald was filed with the Board within the applicable two-year statute of limitations, the Board's determination that Fitzgerald's claim is time-barred under Indiana Code § 22-3-3-3 is erroneous.

Furthermore, we agree with Fitzgerald that Indiana Code § 22-3-3-27 (1998) is applicable here. At the time Fitzgerald suffered his injury, Indiana Code § 22-3-3-27 (1998) provided:

(a) The power and jurisdiction of the worker's compensation board over each case shall be continuing and from time to time it may, upon its own motion or upon the application of either party, on account of a change in conditions, make such modification or change in the award ending, lessening, continuing, or

extending the payments previously awarded, either by agreement or upon hearing, as it may deem just, subject to the maximum and minimum provided for in IC 22-3-2 through IC 22-3-6.

\*   \*   \*   \*   \*   \*

■ (c) The board shall not make any such modification upon its own motion nor shall any application therefor be filed by either party after the expiration of two (2) years *from the last day for which compensation was paid under the original award* made either by agreement or upon hearing, except that applications for increased permanent partial impairment are barred unless filed within one (1) year from the last day for which compensation was paid. The board may at any time correct any clerical error in any finding or award.[1]

Ind.Code § 22-3-3-27 (1998) (emphasis added). This statute provides the Board with continuing jurisdiction to "make such modification or change in the award … extending the payments previously awarded[.]" Here, this statute applies because Fitzgerald's application for adjustment of claim regards extending his original award (the temporary total disability payments) to include permanent partial impairment and future medical payments. Nevertheless, Fitzgerald's claim is time-barred under this statute. Indiana Code § 22-3-3-27 (1998) requires that an application for modification be filed within two years "from the last day for which compensation

1. In 2006, the Legislature amended Indiana Code § 22-3-3-27 by deleting "under the original award made either by agreement or upon hearing, except that applications for increased permanent partial impairment are barred unless filed within one (1) year from the last day for which compensation was paid" from the end of the first sentence in Subsection (c). "As a general rule, the law in place at the time an action is commenced governs." *Ind. Dep't of Envtl. Mgmt. v. Med. Disposal Serv., Inc.,* 729 N.E.2d 577, 581 (Ind.

2000). Further, unless the Legislature indicates to the contrary, "statutes are treated as intended to operate prospectively, and not retrospectively." *Id.* (citation omitted). Here, the Legislature did not indicate that Indiana Code chapter 22-3-3 would apply retroactively. *See* Pub.L. No. 134-2006, § 7 (effective July 1, 2006). Fitzgerald filed his application in 1999. Thus, the relevant statute in effect at the time this action was commenced is Indiana Code § 22-3-3-27 (1998).

was paid under the original award." I.C. § 22–3–3–27 (1998). Here, it is undisputed that Fitzgerald's last day of compensation for his temporary total disability benefits was February 7, 2001. However, Fitzgerald did not file his application for adjustment of claim until February 19, 2004, over three years after he last received compensation. This is well beyond the two-year limitation period. Therefore, the Board was without jurisdiction to entertain his claim. *See R.W. Armstrong Corp. v. Manhart,* 585 N.E.2d 1377, 1379 (Ind.Ct.App.1992).[2]

■ Still, Fitzgerald urges us to find that the last day of "compensation" was February 9, 2004, the date on which he was reimbursed wages for missing work to be evaluated for his permanent partial impairment benefits. He maintains that the reimbursed wages he received on February 9, 2004, constitute "compensation," and therefore he had until February 9, 2006, to file his application for adjustment of claim. We disagree.

We note that the term "compensation" is not defined in the Act. Nevertheless, we

have previously held that an employer-provided medical service does not constitute compensation under the Act. *See Berry v. Anaconda Corp.,* 534 N.E.2d 250, 253 (Ind.Ct.App.1989) ("Medical services … are not compensation as that term is used under the act."); *Cincinnati Ins. Co. ex rel. Struyf v. Second Injury Fund,* 863 N.E.2d 1242, 1250–51 (Ind.Ct.App.2007) ("An injured worker does not receive compensation payments for medical expenses; rather, [he] receives compensation payments due to [his] inability to work."). Because the permanent partial impairment evaluation conducted by Dr. Mahawar is a medical service provided to Fitzgerald by USS, receiving a wage, as reimbursement for the day of work missed as a result of this evaluation, does not constitute compensation under the original award. Thus, the Board did not err in concluding that "wage reimbursement" is not "compensation" under Indiana Code § 22–3–3–27 (1998).[3]

■ Fitzgerald further argues that the Board erred in concluding that the statute

**2.** USS cites to and the Board relies upon *Halteman Swim Club v. Duguid,* 757 N.E.2d 1017 (Ind.Ct.App.2001), in support of the position that if Indiana Code § 22–3–3–27 (1998) applies then Fitzgerald had one year after the date for which he last received compensation within which to file his application for modification. However, *Halteman* is inapposite. In *Halteman,* the employee filed her modification petition after the permanent partial impairment had been adjudicated. Here, the employee is not seeking to modify an adjudicated permanent partial impairment but instead is seeking to modify an original award. Thus, Fitzgerald had two years from the last date for which compensation was paid under the original award to seek modification. In any event, Fitzgerald did not timely file his petition to modify.

**3.** Fitzgerald also relies on *Stump Home Specialties Manufacturing v. Miller,* 843 N.E.2d 18 (Ind.Ct.App.2006), for the proposition that

the date of maximum medical improvement or the date his permanent partial impairment rating was issued should be the starting date for the statute of limitations. *Stump* does not stand for the proposition that the maximum medical improvement date is the date when the time period under Indiana Code § 22–3–3–27 begins to run. In *Stump,* there was an agreement regarding the amount of the employee's permanent partial impairment, but the agreement was silent as to the time period that the permanent partial impairment was considered paid. We held that given those circumstances, the Worker's Compensation Board did not abuse its discretion by determining that the permanent partial impairment began on the date of maximum medical improvement and continued for a period of thirty-five weeks. Here, the date for which Fitzgerald received his last compensation was February 7, 2001. Hence, *Stump* is inapposite.

of limitations was not tolled due to USS's alleged fraud and misrepresentations to Fitzgerald. For this issue, we are bound by the factual findings of the Board unless the evidence is undisputed and leads inescapably to a different conclusion. *See Eads,* 817 N.E.2d at 265. Fitzgerald, himself, admits that this is not out-and-out fraud but rather maintains that he relied on USS's inaction. The evidence in the case belies this argument. Fitzgerald testified to the following:

Q. Are you claiming that anybody at U.S. Steel committed fraud or misrepresentation in connection with the handling of your claim?

A. No, I'm not claiming that.

Q. Okay. Are you claiming anybody at U.S. Steel committed any fraud or misrepresentation with respect to whether or not you could file an application with the board?

A. No, I'm not claiming that at all.

Q. You're not claiming anybody from U.S. Steel delayed your filing an application in this case, are you?

A. No, I'm not claiming that.

Q. You're not claiming anybody from U.S. Steel told you you didn't have to file an application, are you?

A. No, but they didn't tell me I had to either.

Q. You're not claiming that anybody from U.S. Steel deceived you with respect to your claim, are you?

A. No.

Q. Why did you decide to file your application on February 19, 2004?

A. Because I was under the assumption that the claim—that I had to be totally finished with my medical rehabilitation before I could file that claim.

Q. Nobody from U.S. Steel told you that, did they?

A. No.

Q. You could have filed an application earlier, right?

A. I probably could have.

\* \* \* \* \* \*

Q. Okay. Did either Dr. Tokowitz, Betty or Nancy make any representations to you about what they would do with respect to any future dental care or treatment that you would need after you reached a state of maximum medical improvement or a quiescent state?

A. No, they never made a statement about that.

Q. Did anybody from U.S. Steel make any representations to you in that regard?

A. No.

\* \* \* \* \* \*

Q. But neither Dr. Tokowitz, Betty or Nancy made any specific representation with respect to future dental care and treatment for the rest of your life, did they?

A. They never said that, no.

*Id.* at 66, 69, 70. Fitzgerald's testimony supports the Board's finding that USS did not commit fraud or make fraudulent misrepresentations. As such, we will not disturb the findings of the Board.

■ Finally, Fitzgerald argues that USS had the legal duty to tell him: (1) that he needed additional medical and dental treatment, (2) when the statute of limitations tolled, and (3) their intent to deny him medical treatment after he reached maximum medical improvement. However, the Board did not address these arguments because they were not included in the parties' stipulated issues. Because the Board was limited to considering only those issues stipulated by the parties, Fitzgerald has waived this argument on ap-

peal. *See Ind. Mich. Power Co. v. Roush,* 706 N.E.2d 1110, 1115 n. 4 (Ind.Ct.App. 1999) ("Where neither the hearing member nor the Board addresses an issue, a litigant cannot raise that issue for the first time on appeal."), *trans. denied.* Likewise, Fitzgerald maintains that the Board erred by not addressing his theory of negligent concealment or equitable estoppel. However, the Board did not address these legal issues because they, too, were not raised before the Board and go beyond the stipulated issues. Therefore, he has waived these issues as well. The Board did not err in finding that Fitzgerald's application was time-barred.

Affirmed.

MAY, J., and MATHIAS, J., concur.